UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

COREY HERB,

               Petitioner,

      -against-

JOSEPH T. SMITH,

              Respondent.
------------------------------------------------------------X

MEMORANDUM & ORDER
14-CV-4405 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Corey Herb brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Pet. (Dkt. 1).) Petitioner challenges his state conviction on several grounds: he alleges that the evidence was not legally sufficient to convict, that the state prosecution's (the "Prosecution's") summation was improper, and that his Confrontation Clause rights were violated. He later sought to add an additional claim of ineffective assistance of counsel (the "Motion to Amend"). (Pet'r Jan. 13, 2017, Reply to Ct. Order ("Pet'r Mot. to Am.") (Dkt. 21).) For the reasons set forth below, the Motion to Amend is DENIED and the Petition is DISMISSED.

## I. BACKGROUND

### A. Petitioner's Conviction and Sentencing

On June 22, 2011, Petitioner was convicted of manslaughter in the first degree and criminal possession of a weapon in the second degree. (Ross Aff. in Opp'n to Pet. (Dkt. 7 at ECF p.1) ¶ 8.) On August 17, 2011, the New York State Supreme Court (the "State Trial Court") sentenced Petitioner to 25 years' imprisonment with 5 years of post-release supervision

1

on the manslaughter count, to run concurrently with a 10-year term of imprisonment with 5 years of post-release supervision on the weapon possession count. (Id. ¶ 9.)

**B. Petitioner's Direct Appeal**

Petitioner appealed his conviction and raised three claims: (1) the Prosecution failed to establish Petitioner's guilt of manslaughter beyond a reasonable doubt, and moreover, the verdict was against the weight of the evidence; (2) the Prosecution's improper summation denied Petitioner a fair trial; and (3) Petitioner's Confrontation Clause rights were violated by the admission of testimony of a medical examiner who did not personally prepare the decedent's autopsy report, and also by the admission of the entire autopsy report, which allegedly contained opinion testimony. (See Herb Br. on Direct Appeal (Dkt. 7-2 at ECF p.2).)

The New York Appellate Division, Second Department, affirmed Petitioner's conviction. The Appellate Division found that Petitioner failed to preserve his first two claims for appellate review. People v. Herb, 110 A.D.3d 829, 830-31 (N.Y. App. Div. 2013) ("Herb I"). The court also rejected both of these claims on the merits, finding that "two main prosecution witnesses afforded a credible foundation upon which the jury could find the defendant guilty of manslaughter in the first degree," id. at 830, and finding no error—or, at worst, harmless error—in the Prosecution's summation, id. at 831.

As for Petitioner's Confrontation Clause claims, the court noted that Petitioner had presented two distinct arguments, but found that neither entitled him to relief. The court found no Sixth Amendment violation based on admission of the autopsy report through the testimony of a witness who did not prepare the report, "since the defendant was afforded full cross-examination of the testifying expert witness." Id. Petitioner also argued that the report author's "opinion concerning the cause and manner of the decedent's death constituted testimonial

2

evidence," and that "admission of the unredacted report into evidence [thus] deprived [Petitioner] of his right to confront a witness against him." Id. at 830-31. The court found that this claim was unpreserved for appellate review, and further, that "any error . . . was harmless beyond a reasonable doubt" because "the evidence of the [Petitioner's] guilt, without reference to any error in [the report's] admission, was overwhelming." Id. at 831.

On December 31, 2013, the New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Herb, 4 N.E.3d 387 (N.Y. 2013) ("Herb II").

### C. The Federal Habeas Petition and State Coram Nobis Petition

On July 17, 2014, Petitioner timely filed the instant habeas petition. (Pet.) The Petition restates the three claims he raised on direct appeal. On April 30, 2015, Petitioner filed a writ of error coram nobis in state court (the "Coram Nobis Petition"), claiming that he had received ineffective assistance of appellate counsel. (Verified Coram Nobis Pet. (Dkt. 14-1).) On January 13, 2017, Petitioner wrote to this court seeking to amend his Petition to include the ineffective assistance claim first raised in his Coram Nobis Petition. (Pet'r Mot. to Am.)

## II. STANDARDS FOR STATE HABEAS PETITIONS

District courts are empowered to review an application for a writ of habeas corpus on behalf of a person in state custody only insofar as the petition asserts violations of the United States Constitution or other federal law. 28 U.S.C. § 2254(a). A state habeas petitioner must generally meet three requirements to obtain relief: (1) exhaustion and timeliness; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A. Exhaustion and Timeliness

A state habeas petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). To satisfy

that requirement, "the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Rush v. Lempke, 500 F. App'x 12, 14 (2d Cir. 2012) (summary order) (quoting Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc)). In New York, a defendant satisfies the exhaustion requirement by appealing the conviction to the Appellate Division "and then seeking leave to appeal to the New York Court of Appeals." Chrysler v. Guiney, 806 F.3d 104, 117 (2d Cir. 2015) (internal citation omitted).

AEDPA further imposes a one-year statute of limitations, which requires habeas petitioners to file their habeas claims within one year of the state judgment becoming "final." 28 U.S.C. § 2244(d)(1). The limitations period does not begin to run "until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). If the defendant does not "petition the Supreme Court for certiorari," the judgment "bec[omes] final 90 days later." Fuller v. United States, 815 F.3d 112, 113 (2016).

B. Procedural Default

"A federal habeas court . . . may not review a related state court decision if that decision rests on a state law ground that is 'independent of the federal question and adequate to support the judgment.'" Fulton v. Graham, 802 F.3d 257, 262 (2d Cir. 2015) (quoting Cone v. Bell, 556 U.S. 449, 465 (2009)). "This prudential rule applies 'whether the state law ground is substantive or procedural.'" Id. (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

C. AEDPA Deference

If a state court reached the merits of a federal claim asserted in a Section 2254 habeas

4

petition, AEDPA requires the federal habeas court to apply a highly deferential standard of review. Habeas relief may only be granted if the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The words "clearly established federal law" refer to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). The central question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) (internal quotation marks, alterations, and emphases omitted).

With regard to the state court's factual determinations, "a federal court is required to presume that a state court's factual findings are correct and to place on the petitioner the burden of rebutting this presumption by clear and convincing evidence." Fulton, 802 F.3d at 262 (citing 28 U.S.C. § 2254(e)(1)).

## III. DISCUSSION

The court first considers the Motion to Amend the Petition by adding a newly exhausted claim of ineffective counsel. The court denies the Motion to Amend as untimely. As for the three claims in the original Petition, the court finds that these claims were properly exhausted because they were considered and rejected in the state courts. However, the court finds that each claim fails under either a procedural bar or AEDPA's deference standard. Therefore, the Petition must be dismissed.

5

A.   **Petitioner's Motion to Amend the Petition**

Petitioner seeks to amend his Petition to add a claim of ineffective assistance of counsel. Petitioner first requested this amendment after the expiration of the one-year statute of limitations for habeas petitions. Because the court declines to equitably toll the one-year statute of limitations, and because the ineffective assistance claim does not "relate back" to the claims in his original Petition, the amendment is untimely. Thus, the Motion to Amend the Petition is denied.

1.   <u>Legal Standards</u>

A habeas petitioner can file new claims after the expiration of AEDPA's one-year statute of limitations under two circumstances: (1) the district court may equitably toll the statute of limitations; or (2) the petitioner may add new claims that "relate back" to the claims in the original, timely filed habeas petition.

   *a.   Equitable Tolling*

A court will equitably toll the statute of limitations if the petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Thus, a court must find a "causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Jenkins v. Greene, 630 F.3d 298, 303 (2d Cir. 2010) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

### b. *Relating Back*

A habeas petitioner may file an amended petition after the one-year time limit has run "as provided in the rule of procedure applicable to civil actions." 28 U.S.C. § 2242. The applicable civil rule provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

An amendment to a habeas petition "does not relate back" if "it asserts a new ground for relief supported by facts that differ in both time and type from those [in] the original pleading." Mayle v. Felix, 545 U.S. 644, 650 (2005). It is not sufficient that the amendment generally refer back to the same trial, conviction or sentence. Id. at 656-57. Instead, the amended claim must arise out of "the same core facts alleged in the original petition." Gibson v. Artus, 407 F. App'x 517, 519 (2d Cir. 2010) (summary order) (citing Mayle, 545 U.S. at 656-57).

### 2. Analysis

Petitioner's state conviction became "final" on April 1, 2014, after the expiration of his 90-day period for seeking certiorari from the denial of his leave to appeal to the New York Court of Appeals. See Herb II, 4 N.E.3d 387; Williams, 237 F.3d at 151. On April 30, 2015, nearly a month after AEDPA's one-year statute of limitations had run, Petitioner filed the Coram Nobis Petition, where he first made his claim of ineffective assistance of appellate counsel. (Verified Coram Nobis Pet.) Specifically, Petitioner faults appellate counsel for failing to argue that the State Trial Court erred in permitting the Prosecution to amend the indictment during the course of trial.[1] (Id.) Petitioner requested that this court "toll the time" on his federal habeas petition

---

[1] The indictment originally read that Petitioner, "[w]ith the intent to cause the death of Christopher Torres[,] caused the death of Christopher Torres." (Trial Tr. (Dkt. 7-1) 285:13-15.) The indictment was charged to the jury as "with

7

"until a decision is rendered" on the Coram Nobis Petition in order to "preserve [those claims] for review in this Court." (Pet'r May 3, 2015, Ltr. (Dkt. 12).) The State opposed Petitioner's motion, objecting on the grounds that the amendment would be untimely and would not "relate back to the claims in the original petition." (State Mem. of Law in Opp'n to Stay ("State Opp'n to Stay") (Dkt. 16 at ECF p.4) ¶ 12.)

The Appellate Division denied the Coram Nobis Petition on October 7, 2015, People v. Herb, 17 N.Y.S.3d 302 (N.Y. App. Div. 2015), and denied leave to appeal on January 8, 2016, People v. Herb, Index No. 8137/09, slip op. M204392 (N.Y. App. Div. Jan. 8, 2016). On January 13, 2017, Petitioner requested to amend his habeas petition to include the same ineffective assistance of counsel claim that he raised in the Coram Nobis Petition, and asked the court to disregard AEDPA's one-year statute of limitations. (Pet'r Mot. to Am.)

As a preliminary matter, the court declines to equitably toll AEDPA's one-year statute of limitations. Petitioner has failed to allege any extraordinary circumstance that prevented him from timely amending his Petition. Courts will not equitably toll "when a litigant is responsible for its own delay."[2] Menominee Indian Tribe of Wis. v. United States, — U.S.—, 136 S.Ct. 750, 756 (2016); see also Antonmarchi v. Con. Edison Co. of N.Y., Inc., 514 F. App'x 33, 37 (2d Cir. 2013) (summary order) (affirming a finding that a pro se plaintiff failed to show "extraordinary circumstances" based an explanation that he was "unaware of the statute of limitations").

---

intent to cause the death of another person, caused the death of Christopher Torres." (Id. 285:9-12 (emphasis added).) Petitioner's trial counsel objected to that change. (Id. 286:7). The State Trial Court ruled that amending the indictment was permissible and stated that the indictment should read, "the defendant intended to cause the death of Chris Torres, or Marcus, or Johanson Smith also known as Screech, one of those individuals, and caused the death of Chris Torres." (Id. 377:4-12.) Appellate counsel did not challenge the indictment amendment on appeal.

[2] The court notes, in addition, that Petitioner has failed to show why he could not exhaust his ineffective assistance claim before filing his habeas petition in federal court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) ("[S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). Other courts have found that "[i]nadvertent failure based on ignorance of the law" is not sufficient to show good cause. McCrae v. Artus, No. 10-CV-2988 (RMM), 2012 WL 3800840, at *10 (E.D.N.Y. Sept. 2, 2012) (internal citations omitted).

The court further finds that Petitioner's proposed amendment does not relate back to the claims in his original petition. Whereas the original claims refer to events during Petitioner's criminal trial, the amendment addresses his criminal appeal. Moreover, none of the claims in the original Petition address the indictment. The proposed amendment thus does not have "a clear connection to the original pleading." Gibson, 407 F. App'x at 519; see also, e.g., Pinero v. Greiner, 519 F. Supp. 2d 360 (S.D.N.Y. 2007) (finding that an amendment alleging ineffective assistance of appellate counsel did not relate back to the original petition, which alleged ineffective assistance of trial counsel).

The court declines to equitably toll the statute of limitations, and finds that Petitioner's proposed amendment does not relate back to the Petition. The Motion to Amend is therefore denied as untimely.

### B. Claims of Legally Insufficient Evidence and Improper Summation

The first two arguments in the Petition allege that the evidence at trial was insufficient to support Petitioner's conviction, and that Petitioner was prejudiced by the Prosecution's improper summation. The court finds that both claims must be dismissed on grounds of procedural default.

#### 1. Legal Standard

A federal habeas court may not consider a petitioner's claim if it was dismissed at the state level on an adequate and independent state ground. Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007). A state court's finding that a claim is unpreserved "constitutes an 'independent' state law ground for that decision." Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011). Adequacy of the state law ground is "governed by federal law." Richardson, 497 F.3d at 217. A court will find a state rule an adequate ground for barring federal review if the rule is

9

"considered firmly established and regularly followed." Id. at 218. A court must further find that the specific application of that rule is not "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002).

However, an independent and adequate state ground will not constitute a bar to habeas relief if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A court generally will only find cause for a procedural default when "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." Amadeo v. Zant, 486 U.S. 214, 222 (1988). Furthermore, to show a gross miscarriage of justice, a habeas petitioner must allege that an error at the state level "probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citation omitted).

2. Analysis

Petitioner first alleges that the verdict was against the weight of the evidence[3] and that the Prosecution failed to prove Petitioner's identity as the shooter beyond a reasonable doubt. (Pet. at 5.) He next claims that the Prosecution's summation improperly "vouched for witnesses and mischaracterized trial testimony or relief on facts not in evidence." (Id.) The Appellate Division held that Petitioner failed to preserve either claim for appellate review because Petitioner did not contemporaneously object to the alleged errors.[4] Herb I, 110 A.D.3d at 830-31; see also N.Y. Crim. Pro. Law § 470.05(2).

---

[3] A "weight of the evidence" claim "is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)." Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). A federal habeas court may not grant relief on the basis of a state law claim. However, Petitioner's legal sufficiency claim is "based on federal due process principles" and is thus cognizable in federal habeas court. Id.

[4] The Appellate Division also ruled in the alternative that both claims were without merit. Herb I, 110 A.D.3d at 830-31. Those portions of the state opinion do not alter this court's analysis. Even if a state court, in the

10

The Appellate Division's holding that Petitioner failed to preserve his claim for review sufficed as an independent and adequate state ground "independent of the federal" law question. Richardson, 497 F.3d at 217. Because New York's contemporaneous objection rule has a clear basis in state law, it is an adequate state law ground for barring Petitioner's claim. Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir. 1999). Furthermore, the Appellate Division's holding that the claim was procedurally barred was not exorbitant. Though defense counsel moved for a mistrial on other grounds, "general objections to the sufficiency of the evidence are inadequate to preserve specific sufficiency challenges later raised on appeal." Dozier v. McGinnis, 558 F. Supp. 2d 340, 350 (E.D.N.Y. 2008) (citing People v. Finger, 739 N.E.2d 290 (N.Y. 2000); People v. Gray, 652 N.E.2d 919 (N.Y. 1995)). In this case, defense counsel did not object to the legal sufficiency of the evidence, nor did he object to the challenged comments in the Prosecution's summation.

Petitioner has failed to demonstrate any cause for the default, nor has he shown that prejudice will result from a procedural bar. Trial counsel's failure to object is the only cause for default and such "negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Martinez v. Ryan, 566 U.S. 1, 10 (2012) (internal citation and alteration omitted). Finally, Petitioner has failed to demonstrate that barring federal habeas review will result in a gross miscarriage of justice, since he has not alleged that an error at the state level "probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327. Indeed, the Appellate Division suggested that Petitioner's claims would fail on the merits even if they were not barred from review. Herb I, 110 A.D.3d at 830-31.

---

alternative, rules on the merits of an unpreserved claim, the claim remains not preserved, and is therefore barred from federal habeas review. Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).

11

Thus, Petitioner's claims about the insufficiency of the evidence at trial and about the Prosecution's improper summation are barred on grounds of procedural default.

## C. Confrontation Clause Claims

Petitioner next claims that the admission of the autopsy report violated his Sixth Amendment right to confrontation. This claim comes in two flavors. Petitioner first alleges that the autopsy report constitutes "testimonial evidence," and that admission of the report into evidence therefore violated his Sixth Amendment Confrontation Clause rights because he did not have the opportunity to cross-examine the report's author. Petitioner next claims that admission of the entire, unredacted autopsy report violated his right to confrontation. The court finds that the first claim should be dismissed on the merits, and that the second claim should be dismissed on grounds of procedural default.

### 1. Legal Standard

Under the Sixth Amendment, testimonial out-of-court statements may not be admitted into evidence without affording the defendant an opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 51 (2004). When the Crawford Court articulated this standard, it explicitly "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial.'" Id. at 68. The Court has yet to offer a general definition of "testimonial" evidence, but subsequent cases have offered limited additional clarity, albeit in fact-specific form. It remains an open question whether autopsy reports, like the one in this case, are "testimonial."

In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 (2009), the Court concluded that "certificates of analysis," which identified a seized substance as an illegal drug, were testimonial and thus could not be introduced against the defendant without an opportunity to cross-examine

12

the person who prepared the certificate. The Court found the certificates to be "testimonial" because they "are quite plainly affidavits: declarations of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Id. at 310. The certificates "are functionally equivalent to live, in-court testimony, doing precisely what a witness does on direct examination." Id. at 310-11 (internal quotation marks and citation omitted). "[U]nder Massachusetts law[,] the sole purpose of the affidavits was to provide 'prima facie evidence of the composition, quality, and net weight' of the analyzed substance," and courts can "safely assume that the analysists were aware of the affidavits' evidentiary purpose, since that purpose . . . was reprinted on the affidavits themselves." Id. at 311 (internal citation omitted).

Two years later, in Bullcoming v. New Mexico, 564 U.S. 647 (2011), the Court found that a forensic laboratory report analyzing the defendant's blood alcohol content was "testimonial" because "a law-enforcement officer provided seized evidence to a state laboratory required by law to assist in police investigations." Id. at 665 (citation omitted). As in Melendez-Diaz, the forensic "certificate is 'formalized' in a single document," and the "report form" refers to local "rules that provide for the admission of certified blood-alcohol analyses" in legal proceedings. Id. (internal citations omitted).

In Williams v. Illinois, 567 U.S. 50, 132 S.Ct. 2221 (2012), the Court sought to determine whether a witness could testify that the defendant's DNA profile matched the DNA profile produced in a report that was "produced by an outside laboratory.". 132 S.Ct. at 2227. The case yielded no majority holding, however. The four-justice plurality found the report to be non-testimonial,[5] but the plurality's rationale was rejected by five justices. "[I]n all except its

---

[5] Justice Alito, writing for the plurality, advanced two theories on why the DNA report is not testimonial. First, the report was not offered for its truth. Williams, 132 S.Ct. at 2232. Second, it is not the kind of statement that raises Confrontation Clause issues because the report was written before a suspect had been identified. Id. at 2242.

13

disposition," then, the plurality opinion "is a dissent." Id. at 2265 (Kagan, J. dissenting). As a result, Williams "does not . . . yield a single, useful holding" and is "confined to the particular set of facts presented in that case." United States v. James, 712 F.3d 79, 95 (2d Cir. 2013).

Justice Breyer's Williams concurrence acknowledges that Melendez-Diaz and Bullcoming do not answer the "question as to how, after Crawford, Confrontation Clause 'testimonial statement' requirements apply to crime laboratory reports." Williams, 132 S.Ct. at 2248 (Breyer, J., concurring). Second Circuit case law, however, helps clarify the scope of the Court's rulings in Melendez-Diaz and Bullcoming. See, e.g., Spells v. Lee, No. 11-CV-1680 (KAM), 2016 WL 1337283, at *10 (E.D.N.Y. Apr. 4, 2016) (examining Second Circuit case law as part of its determination under AEDPA that a state court determination was not contrary to clearly established Supreme Court precedent).

In a post-Melendez-Diaz case, with facts substantially similar to those in this case, the Second Circuit held that an autopsy report is not testimonial as long as it was not created "for the purpose of establishing or proving some fact at trial." James, 712 F.3d at 88 (quoting Melendez-Diaz, 557 U.S. at 324). The James court considered the following factors in determining that a particular autopsy report was not testimonial and that, as a result, it could be lawfully admitted into evidence through the testimony of a witness who did not personally prepare the report. First, the Office of the Chief Medical Examiner ("OCME"), which is responsible for determining whether to conduct an autopsy,[6] is an independent agency, and is not housed within the New York Police Department or any other law enforcement department. Id. at 98. Second, there was no indication that the autopsy report's preparer was aware the report would be used as evidence

---

[6] The OCME conducts independent investigations of deaths and determines when to conduct an autopsy based on whether "it may be concluded with reasonable certainty that death occurred from natural causes or obvious traumatic injury." N.Y.C. Admin. Code § 17-203.

in a criminal trial; neither party suggested that the autopsy "was anything other than routine." Id. at 99; see also id. (finding "no suggestion" that "anyone [] involved in this autopsy process suspected that [the decedent] had been murdered [or] that the medical examiner's report would be used at a criminal trial").

As a result, the Second Circuit held that "there was no error, much less plain error, in admitting the autopsy report into evidence, or allowing [the witness] to testify regarding it, although she did not conduct it herself." Id. at 99. The James case thus illustrates that Melendez-Diaz and Bullcoming should not be interpreted as requiring all autopsy reports to be deemed "testimonial" for the purposes of the Confrontation Clause.

   2.   Analysis

Petitioner raises two related Confrontation Clause claims. Petitioner first claims that the admission of testimony from a non-author witness violated his Confrontation Clause rights. The State Trial Court and Appellate Division both rejected that claim, however. Because the Appellate Division's decision was not "contrary to clearly established federal law," AEDPA requires this court to dismiss the claim on habeas review. 28 U.S.C. § 2254(d)(1). Petitioner's second claim is that the admission of the autopsy report in its entirety deprived him of his Sixth Amendment rights. This claim is barred on grounds of procedural default.

   *a.   Admission of the Autopsy Report via a Non-Author Witness*

In July 2009, Dr. Julia De la Garza of the New York OCME performed an autopsy on Christopher Torres and prepared an autopsy report. (Trial Tr. 301:10-15.) At the time of Petitioner's 2011 criminal trial, Dr. De la Garza was no longer working at the OCME. (Id. 301:19-21.) Instead, city medical examiner Dr. Aglae Charlot testified as to the contents of the autopsy report. (Id. 298:17-21, 304:24-311:19.) Defense counsel objected that the autopsy report was testimonial and that permitting Dr. Charlot to testify as to the report's contents

15

violated Petitioner's Confrontation Clause rights. (Id. 289:11-292:9.) The State Trial Court permitted Dr. Charlot's testimony and admission of the autopsy report, finding that "there will be a witness that [defense counsel] will be able to cross-examine" and that he was "not aware of any holdings, either in Federal or State Court deeming autopsies to be testimonial."[7] (Id. 292:11-293:10.) The Appellate Division affirmed. Herb I, 110 A.D.3d at 830.

This court finds that the state courts' decision to permit Dr. Charlot to testify about the autopsy report did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). In making this determination, "a habeas court must be guided by the level of specificity of the relevant precedent's holding." Contreras v. Artus, 778 F.3d 97, 110 (2d Cir. 2015). "The more general the rule, the more leeway in reaching outcomes in case-by-case determinations." Id.

Because Petitioner objects to the admission of an autopsy report—rather than to a certificate of analysis identifying a seized substance as an illegal drug (as in Melendez-Diaz) or to a forensic lab report analyzing blood-alcohol levels (as in Bullcoming)—there is no Supreme Court case directly on point. The state courts were thus left to interpret a general rule regarding "testimonial" evidence, with a body of self-consciously unsettled law about what "testimonial" means in the context of scientific reports. The Second Circuit's opinion in James is not dispositive because Section 2254 explicitly confines the analysis to "clearly established Federal law, as determined by the Supreme Court." Even so, this court is disinclined to disturb a state determination that accords with the Second Circuit's application of Melendez-Diaz and Bullcoming to highly similar facts: here, as in James, there was no indication that the police

---

[7] The court notes that there are federal opinions deciding that certain autopsy reports are testimonial for the purposes of that particular case. See, e.g., United States v. Ignasiak, 667 F.3d 1217 (11th Cir. 2012). The court is not aware of any federal case—much less any Supreme Court case—holding that all autopsy reports are testimonial as a matter of law.

16

department was involved in the preparation of the autopsy report, nor is there any indication that the report's author predicted that the report would be introduced as evidence at a criminal trial.

The determination of whether a particular autopsy report is "testimonial" is highly fact-specific, and must be made without clear guidance from the Supreme Court. Given the "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," the court finds no basis for concluding that the Appellate Division's opinion was contrary to clearly established Supreme Court precedent. Carmichael v. Chappius, 848 F.3d 536, 544-545 (2d Cir. 2017) (internal citations omitted); see also Ryan, 303 F.3d at 245 (limiting the federal habeas analysis to "whether the state court . . . was objectively unreasonable" (internal quotation marks and citations omitted)).

Petitioner has failed to overcome the deference owed to the state courts' reasoning under AEDPA. Petitioner's claim must therefore be dismissed.

### b. *Admission of the Unredacted Autopsy Report*

Petitioner next claims that admission of the <u>unredacted</u> autopsy report deprived him of his constitutional right to confrontation. Petitioner first raised this claim on direct appeal, where he argued that the autopsy report contained opinions "concerning the cause and manner of the decedent's death," and thus constituted testimonial evidence. Herb I, 110 A.D.3d at 830-31. The Appellate Division held that Petitioner "did not object to the admission of the autopsy report on this ground" and thus failed to preserve the claim for appeal. Id.

While defense counsel did object to the admission of the autopsy report on Crawford grounds—i.e., that Dr. Charlot, who had not prepared the report herself, could not testify about its contents—he did not object to the admission of the autopsy report <u>itself</u> on the grounds that, in unredacted form, it included Dr. De la Garza's "opinion testimony." (Herb Br. on Direct Appeal at 41.) Defendant conceded as much in his brief on direct appeal. (Pet'r. App. Br. at 6

17

("And while redacting De la Garza's opinion testimony from the report may have lessened the Sixth Amendment violation, counsel did not seek this compromise.").) This claim is therefore barred on grounds of procedural default. See supra Section III.B.1 (discussing the legal standard for procedural default). In any event, even if Petitioner could show cause for the default, he cannot establish any gross miscarriage of justice: the Appellate Division noted that, even if this claim had been preserved for review, "there is no reasonable possibility that the error contributed to [Petitioner's] conviction." Herb I, 110 A.D.3d at 831.

Because the Appellate Division found that Petitioner failed to preserve this claim, this court finds that the claim must be dismissed on grounds of procedural default.

### IV. Conclusion

For the reasons stated above, Petitioner's Motion to Amend (Dkt. 21) is DENIED and the Petition (Dkt. 1) is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
April 21, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge